UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

CONTINENTAL CASUALTY COMPANY,   )
        Plaintiff,   )
          )
   vs.   )     1:09-cv-0007-LMJ-DML
          )
SYCAMORE SPRINGS HOMEOWNERS   )
ASSOCIATION, INC.,   )
        Defendant.   )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant's, Sycamore Springs Homeowners Association, Inc. (the "Association"), Motion for Summary Judgment (Dkt. No. 35), and Plaintiff's, Continental Casualty Company ("Continental"), Motion for Summary Judgment (Dkt. No. 39).  The Association argues that Continental is liable for breach of a third-party insurance contract between Continental and, Courtyard, a developer of the Sycamore Springs neighborhood ("the Neighborhood").   Continental asserts that Courtyard's insurance policy (the "Continental Policy") does not provide coverage for the damages that Courtyard caused the Association to incur.  For the following reasons the Court **DENIES** the Association's Motion for Summary Judgment and **GRANTS** Continental's Motion for Summary Judgment.

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

This matter comes before the Court following litigation in the Marion County Superior Court.  In August 2005, the Association sued persons and companies involved in the

development of the Neighborhood, a subdivision in northeastern Indianapolis, seeking damages for, among other things, negligent design, construction and approval of the stormwater drainage system; breach of the developer's duties to the Association; breach of the implied warranty of habitability; breach of express or implied covenants; breach of the storm sewer agreement; and conversion. *See generally* Def.'s Ex. D.  The Association sought the cost of remedial measures to reduce the risk of harm from future flooding.  See Pl.'s Ex. 1 ¶¶ 23-25.  The case ended in an Agreed Judgment between Courtyard and the Association, among others.  *See generally* Pl.'s Ex. 1.  Continental did not defend Courtyard in the Marion County lawsuit.  Compl. ¶ 19.  The Agreed Judgment resulted in an award of damages to the Association in the amount of $335,000.00 against Courtyard. Pl.'s Ex. 1 ¶ 25.

After the court approved the Agreed Judgment, Courtyard and the Association entered into a separate agreement whereby Courtyard would pay the Association $35,000.00 in exchange for the Association's agreement not to execute the unsatisfied portion of the judgment against Courtyard.  Pl.'s Ex. 6 ¶¶ C, E.  Continental instituted this action seeking declaratory judgment that it was not obligated to pay any portion of the judgment against the Courtyard.  Compl.  The Association counterclaimed seeking a judgment against Continental as Courtyard's insurer in favor of the Association in the amount of $300,000.00 and post-judgment interest.  Answer and Countercl.

## B.  FACTUAL HISTORY

The Neighborhood is located near Dean Road and 82nd Street in Indianapolis Indiana.  Pl.'s Ex. 1 ¶ 1.  At the time of its acquisition, the Neighborhood was located in a

2

natural depression that was part of the 100-year floodplain of the White River. *Id.* ¶ 3. The Neighborhood's developers constructed levees and floodwalls to protect the site on which the Neighborhood and the surrounding area. *Id.*

After many other sections of the Neighborhood were developed, Courtyard bought one section, known as Parcel D, for development. *Id.* ¶ 9. As a condition precedent to the sale, Sheehan Development backfilled a retention pond located on Parcel D so that Parcel D could be developed more densely than was originally planned. *Id.* Following the backfilling of the retention pond, the total stormwater detention storage capacity of the Neighborhood was reduced. *Id.* Additionally, Courtyard granted several drainage easements to owners of various other parcels in the area. *Id.* ¶ 11. The development of duplexes on Parcel D, instead of single family homes, increased the rate and volume of stormwater runoff for Parcel D. *Id.* ¶ 13. As a result, there was a decrease in the Neighborhood's stormwater drainage system's ability to absorb the run off entering the system. *Id.*

On September 1, 2003, heavy rains fell in northeast Indianapolis. *Id.* ¶ 17. As a result, one of the retention ponds in the Neighborhood overflowed and flooded common areas and several homes situated outside of Parcel D. *Id.* The decrease in stormwater detention capacity caused by the backfilling of the retention pond in Parcel D, combined with the increased runoff to the retention pond caused by developing Parcel D more densely than originally approved added to the damage that would ordinarily be expected from the flood. *Id.* These conditions remained following the flood, and the Agreed Judgment awarded damages that included the cost of remediating the stormwater

detention system to ameliorate the unreasonable risk of property damage and personal injury from future flooding.  *Id.* ¶¶ 23-24.

## C.  THE CONTINENTAL POLICY

The Continental Policy provides one million dollars in "personal injury" coverage per "offense."  Pl.'s Ex. 4.  It also provides one million dollars in "property damage" coverage per "occurrence."  *Id.*  An endorsement added Courtyard to the Continental Policy as an additional named insured as of November 4, 2002.  *Id.*  The policy provides in pertinent part:

> SECTION I - COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.  Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>>
>> ***
>>
>> b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>>
>>> (2) The "bodily injury" or "property damage" occurs during the policy period; . . .

Pl.'s Ex. 4.  The policy defines an "occurrence" as, "an accident, including continuous or repeated exposure to substantially the same general or harmful conditions."  *Id.*  The policy provides further:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

***

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id.*  The policy defines "personal injury" as:

injury including consequential 'bodily injury', arising out of one or more of the following offenses: . . . the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

*Id.*

## II. <u>STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); s*ee also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary judgment

5

are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole*

6

*v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III. <u>DISCUSSION</u>

The Association argues that under Indiana law, it is entitled to a favorable reading of the Continental Policy. It further argues that it is entitled to summary judgment under both the "property damage" and the "personal injury" provisions of the Continental Policy. Conversely, Continental argues that the Court should apply a neutral reading of the Continental Policy and that the policy does not cover the damages that the Association seeks. The parties do not dispute that Indiana law applies to the construction of the Continental Policy. The court will address the arguments in turn.

In Indiana, "[i]nsurance contracts are governed by the same rules of construction as other contracts." *Earl v. Am. States Preferred Ins. Co*, 744 N.E.2d 1025, 1027 (Ind. Ct. App. 2001). Therefore, the interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment. *Id.* "When interpreting an insurance policy, [the Court's] goal is to ascertain and enforce the parties' intent as

manifested in the insurance contract." *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000) (internal quotation omitted). The Court will give the language of the policy its plain and ordinary meaning if it is clear and unambiguous. *Id.* A provision is ambiguous if it "is susceptible to more than one interpretation and reasonable persons would differ as to its meaning." *Am. Family Ins. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 935 (Ind. Ct. App. 2002). The mere fact that the parties offer different interpretations of the policy language is not enough to create an ambiguity. *Id.* If ambiguity exists, the Court will construe the language strictly against the insurer and in favor of coverage in the case of a dispute between an insurer and an insured. *See Gallant Ins. Co. v. Amaizo Fed. Credit Union*, 726 N.E.2d 860, 864 (Ind. Ct. App. 2000). However, where the dispute is between a third party and an insurer, the Court determines the general intent of the contract from a "neutral stance." *Ind. Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973) (noting that where the court is not dealing with the two parties to the contract, and the party claiming money under the policy has never paid a "penny's premium to the insurer" the court can "seek out the general intent of the contract from a neutral stance").

### A. THE COURT'S INTERPRETATION OF THE CONTINENTAL POLICY

The parties essentially agree that the policy language is ambiguous but dispute whether the Court should construe the policy against the insurer or from a neutral stance. The Association asserts that, by virtue of the settlement agreement and the Agreed Judgment, it is a judgment creditor of Courtyard. It argues that Indiana law provides a judgment creditor "steps into the shoes" of the entity against which judgment was entered

8

and, accordingly, has the same rights as the entity against whom the court entered judgment, namely Courtyard.  *See Gray v. Nat'l City Bank*, 687 N.E.2d 356, 358 (Ind. 1997).

The Association cites *T.B. v. Dobson*, 868 N.E.2d 831 (Ind. Ct. App. 2007), to support its argument that judgment creditors are entitled to the same liberal construction of insurance policies as insureds.  The Association's reliance is misplaced.  In *T.B.*, the victim entered into an agreed judgment with the tortfeasor that was conditioned on a promise not to execute on the tortfeasor's personal assets.  *Id.* at 834.  The victim filed a proceeding supplemental against the tortfeasor's insurer.  *Id.*  The Court of Appeals determined that the policy language at issue was unambiguous and, therefore, did not reach the question of whether it should interpret the policy language from a "neutral stance" or a liberal one in favor of the insured.  *Id.*  Accordingly, although the court determined that there was coverage, *T.B.* does not stand for the proposition that judgment creditors are entitled to the more liberal standard of construction to which insureds are entitled.

The Association also argues that cases cited by Continental indicating that it is entitled to a neutral reading of the Continental Policy do not apply to the instant case because none, except one, involved judgment creditors.  However, the fact that Continental failed to cite cases involving judgment creditors is of no consequence because Indiana courts have made clear that where a case involves a dispute between an insurer and a third party, even a judgment creditor, the court must use a neutral stance to construct the policy language.  *Liberty Mut. Ins. Co. v. Mich. Mut. Ins. Co.*, 891 N.E.2d 99 (Ind. Ct. App. 2000) (collecting cases); *see Town & Country Mut. Ins. Co. v. Sharp*, 538 N.E.2d 6, 10 n.3 (Ind. Ct. App. 1989) (noting that "[a]s judgment creditors [the defendants] are not entitled

9

to the benefit of a liberal construction of an insurance policy which was issued to and for the benefit of another party").   Therefore, to the extent that the policy provisions are ambiguous, the Court will construe them from a neutral stance.   To the extent, however, that the provisions are not ambiguous, the Court will give them their plain meaning.  *Smith v. Auto-Owners Ins. Co.*, 877 N.E.2d 1220, 1222 (Ind. Ct. App. 2007).

## B.  PROPERTY DAMAGE PROVISION

Continental asserts that, in the litigation between the Association and Courtyard, the Association did not seek compensation for physical injury to tangible property.  Rather it sought compensation to avoid future flooding.  Therefore, according to Continental, none of the damages in the Agreed Judgment are covered by the Continental Policy. Conversely, the Association asserts that the genesis of its complaint against Courtyard was the flood and, therefore, damages provided by the Agreed Judgment are covered by the Continental Policy.

The Association does not direct the Court to any part of the Third Amended Complaint that seeks anything other than damages to remedy the drainage system in order to avoid future flooding.  The Association urges the Court to note its allegation that it suffered injuries "including the costs to repair, replace or upgrade the . . . curbs, curb ramps and other amenities."  Third Am. Compl. ¶ 82.  However, when read in context, these injuries had nothing to do with the flood at issue. Instead, they concerned Courtyard's failure to adhere to the Americans with Disabilities Act.  *Id.*  ¶¶ 66-68, 81.  Accordingly, the only damages provided by the Agreed Judgment that concern the drainage issue are to

alleviate the future risk of flooding in the neighborhood and not for any physical property damage caused by the flood.[1]

Continental asserts that its policy does not cover the risk of future flooding because that risk is not due to "property damage" as defined in the policy.

The policy provides that "property damage" means:

(a) Physical injury to tangible property, including all resulting loss of the use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Def.'s Ex. E at 13.  The Association argues that Section b of the definition provides coverage for loss of use that happens after the policy expires, is covered because it is 'deemed to occur at the time of' the physical injury or occurrence that caused the loss of use."  Def.'s Resp. at 11.  There is some ambiguity in the provision, and the Court, as explained above, will construe the provision from a neutral stance. So construed, the Policy only covers the Association's existing loss of use.  Here the damages that the Association sought against Courtyard were not for any existing loss of use.

Contrary to the Association's suggestion, *Hartford Accident & Indem. Co. v. Dana Corp.*, does not support its argument.  690 N.E.2d 285 (Ind. Ct. App. 1997).  In *Dana* an insured sought to recover damages resulting from an environmental release action against the insured.  *Id.* at 288-89.  Ultimately, the court concluded that the insurer was obligated

---

[1]Continental directs the Court to alleged statements of the Association's counsel in the Marion County litigation in order to bolster its argument that the Association did not seek damages for existing flood damage in that suit.  The Association challenged their admissibility in its Response to Continental's Motion and Continental concedes that the statements were cumulative.  The Court does not rely on them in its decision and declines to determine whether they are admissible.

to cover "[t]he cost of containment as a remedial action taken to prevent further release of hazardous substances." *Id.* at 298.  The Association likens the damages it seeks to recover from Continental to those the insured sought in *Dana*.  However, in *Dana*, the the insured sought containment costs to prevent releases of existing hazardous substances. *Id.*  In the instant case, the expenses sought by the Association are related to preventing future emissions or discharges.  Therefore, *Dana* does not support the Association's proposition that preventative measures like those it seeks to recover are  "damages."  *See Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 582-83 (Ind. 2007) (limiting *Dana* to the notion that "damages" for preventative measures in environmental cases means damages to clean up prior environmental damages or to prevent the release of existing hazardous substances).

The plain language of the policy provides coverage of damages for the happening of an accident or occurrence, not damages that are necessary to prevent an occurrence. Here, the accident was the flooding that resulted from the faulty workmanship, and any damages that resulted from this accident would be recoverable.  However, the policy does not provide coverage for anticipated damages from a loss that has not yet happened.  *See Cinergy Corp.*, 865 N.E.2d at 582 (noting that "[t]he clear an unmistakable import of the phrase 'caused by' is that the accident, event, or exposure to conditions must have preceded the damages claimed").  Therefore, the Court concludes that the Continental Policy does not cover the particular damages the Association sought in the Third Amended Complaint and won in the Agreed Judgment.

## C.  PERSONAL INJURY PROVISION

Turning to the question of whether the damages are covered by the "personal injury" provision of the Continental Policy, the Court notes that the Continental Policy provides that "[t]his insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."  The policy defines "personal . . . injury" as "injury . . . arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."

The Association argues that *Travelers Indem. Co. v. Summit Corp.*, controls whether Continental must provide coverage under the personal and advertising injury provision in this case.  715 N.E.2d 926 (Ind. Ct. App. 1999).  *Summit* was an environmental cleanup case, where the insurer was required to provide coverage for "personal injury" damages caused by the contamination of the insured's real property which spread to neighboring landowners.  *Id.* at 937.  The court in *Summit* determined that the "personal injury" provision was ambiguous and should be construed in favor of coverage for damages stemming from chemical discharges onto neighboring real property.  *Id.* at 940.  The *Summit* provision, however, did not contain the "committed by" language that the instant provision contains.  The "committed by" language makes clear that the policy coverage extends only to wrongful entry, eviction, or invasion committed by or on behalf of the owner of the land, namely the Association.

Further, unlike *Summit*, the instant case does not arise in the context of a claim of existing environmental contamination.  Instead, as previously noted, the case before the

13

Court is concerned with the "unreasonable risk" of future flooding as a result of Courtyard's faulty construction of the drainage system. Like the property damage provision, ameliorating this future risk of harm is not contemplated by the language of the personal injury provision. *Cf. Romine v. Gagle*, 782 N.E.2d 369, 383 (Ind. Ct. App. 2003) (finding that in the context of a tort dispute between neighbors where one was diverting water onto the other's land, the cost to avoid future risk of harm from the water diversion was the proper measure of damages).

The flood in 2003 falls squarely within the policy's definition of "personal injury", but that is not what the Association received damages for in the Agreed Judgment. Instead they sought and received damages to ameliorate the "unreasonable risk" of future harm. That potential harm, if and when it occurs, may fall into the policy's definition of an offense, but it did not occur within the 2002-2003 policy period. Accordingly, the Continental Policy does not provide any personal injury coverage for the damages awarded to the Association in the Agreed Judgment.

14

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff's, Continental Casualty Company, Motion for Summary Judgment is **GRANTED** and Defendant's, Sycamore Springs Homeowner's Association, Inc., Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED this the 30th day of August, 2010.


_LARRY J. McKINNEY, JUDGE_
United States District Court
Southern District of Indiana


Distribution to:


John Michael Bowman
PLEWS SHADLEY RACHER & BRAUN
mbowman@psrb.com

Shelley M. Jackson
PLEWS SHADLEY RACHER & BRAUN
sjackson@psrb.com

Donna C. Marron
PLEWS SHADLEY RACHER & BRAUN
dmarron@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

Mary Kaye Reeder
RILEY BENNETT & EGLOFF LLP
mreeder@rbelaw.com